**BLOCH v. MILL FACTORS CORPORATION.**
No. 141.

Circuit Court of Appeals, Second Circuit.
April 2, 1943.

London, Simpson & London, of New York City (David W. Kahn and Ephraim S. London, both of New York City, of counsel), for appellant.

Sperry & Yankauer, of New York City (Walter D. Yankauer and Samuel Weinberg, both of New York City, of counsel), for appellee.

Phillip W. Haberman, Joseph S. Fechteler, White & Case, Dwight, Harris, Koegel & Caskey, and Dills, Muecke, Schelker & Levinson, all of New York City, amici curiae, on behalf of certain factors whose business practices are essentially similar to those of appellee.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

Melbourne Shirt Co., a New York corporation, engaged in manufacturing shirts and pajamas, was adjudicated bankrupt upon an involuntary petition filed June 14, 1938. During the preceding ten months it had borrowed money from Mill Factors Corporation, a New York factoring concern, pledging as security for the loans all accounts receivable arising from its sales of goods. Following the bankruptcy, litigation developed between Melbourne's trustee and the factoring corporation. One phase of the litigation involved the factor's claim of lien upon merchandise returned to the bankrupt by customers whose accounts had been assigned, and that issue was before this court in Bloch v. Mill Factors Corporation, 2 Cir., 119 F.2d 536, 134 A.L.R. 1188. In that case, as the opinion noted at page 538 of 119 F.2d, 134 A.L.R. 1188, the trustee did not question the validity of the assignments so far as concerns the accounts themselves. The present action does involve the validity of the factor's lien upon the assigned accounts, the trustee now contending that the bankrupt retained such dominion and control over them, because of the manner in which it was permitted to deal with merchandise returns, as to invalidate the entire series of assignments and to require the factor to account for all collections made by it after the date of bankruptcy, namely, June 14, 1938. The case was tried to the court without a jury and from an adverse decision the trustee has appealed.

The trustee relies upon the doctrine of Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991, and its application in cases such as Lee v. State Bank & Trust Co., 2 Cir., 38 F.2d 45; Id., 2 Cir., 54 F.2d 518, 85 A.L.R. 216, certiorari denied 285 U.S. 547, 52 S.Ct. 395, 76 L.Ed. 938. The factor contends that the rule of Benedict v. Ratner has been abrogated by section 45 of the New York Personal Property Law, Consol.Laws N.Y.C. 41, or if not, that the principle is not applicable to the facts at bar. In our opinion we can decide the case, as did the court below, without considering the effect of the New York statute.

Benedict v. Ratner, 268 U.S. 353, 362, 45 S.Ct. 566, 69 L.Ed. 991, declared that under the law of New York a transfer of

property as security which reserves to the transferor the right to dispose of the same, or to apply the proceeds thereof for his own uses, is fraudulent in law and void as to creditors. There the agreement permitted the assignor to collect the assigned accounts and to use the proceeds as it saw fit unless the assignee should demand their application on his loan; no question as to the disposition of returned merchandise was involved. That question arose in Lee v. State Bank & Trust Co., 2 Cir., 38 F.2d 45. We there held, applying the Benedict v. Ratner principle, that an agreement permitting the assignor to take back goods from customers whose accounts had been assigned and to dispose of the returns without accountability to the assignee reserved to the assignor such dominion as invalidated the assignments; and that such an agreement might be inferred from the conduct of the parties although their written contract was to the contrary. This decision was adhered to on a second appeal in the same case, 2 Cir., 54 F.2d 518, and was again invoked in Zydney v. N. Y. Credit Men's Ass'n, 2 Cir., 113 F.2d 986. Decision of the case at bar must turn upon whether the proven facts bring it within this rule.

The written factoring contract, dated July 30, 1937 provided that goods should be invoiced by Melbourne on invoice forms approved by the factor. Such forms not only notified the customer that the account was owned by and payable to the factor but also bore a printed statement that "no credits or deductions will be allowed or any returns credited on this bill unless notice of claim therefor is made to Mill Factors Corporation, at 354 Fourth Ave., N. Y. C." Nevertheless the customers seldom observed this requirement as to credits and the parties apparently foresaw that they might not, for the factoring contract obligated Melbourne "to report to the factor immediately all claims and returns," and to hold all returned merchandise "in trust for the factor until the amount advanced upon the account in dispute shall have been repaid" to it. Each account was transferred to the factor by an executed assignment carried on the reverse side of a duplicate copy of the invoice, and each day there was also delivered in the form of an additional assignment a recapitulation of all the accounts separately assigned on that day. Forms to be used by Melbourne in making daily reports of allowances and returns were supplied by the factor, and the returns so reported were immediately debited to Melbourne's account on the factor's books. When a loan was desired, it was customary for Melbourne to telephone its requirements to the office of the factor, and the latter's executive officials would then determine how much, if anything, to advance, basing their decision upon the amount of the bankrupt's equity in the assigned accounts then outstanding. Under its contract the factor was privileged at its option to retain a cushion of ten per cent. of the outstanding accounts. The advances were always made in round amounts. Up to the date of bankruptcy they totalled $177,550 while the total of assigned accounts was $203,973.33. Though never observing the ten per cent. provision literally, the factor at all times kept a substantial balance of security above advances so that a credit would have existed in favor of Melbourne had all the outstanding accounts been collected.

Had the provisions of the factoring contract been carried out literally, the present litigation would never have arisen, for it is obvious that no reservation of dominion by the assignor was permitted by the written agreement. But in two respects Melbourne departed from the contemplated procedure. It failed to report returns and allowances promptly and it put the returns in general stock without segregation and thereafter sold them as part of its regular merchandise. Some 5,000 separate accounts were assigned. The proof showed 431 instances of credits resulting from returns of merchandise or from price allowances. The price allowances were insignificant in amount, only $203.33—a sum too trivial to require further consideration. See In re Gandolfi & Co., 2 Cir., 113 F.2d 300, 301; Zydney v. N. Y. Credit Men's Ass'n, 2 Cir., 113 F.2d 986, 988. The credits for returns of which the factor had notice before the date of bankruptcy were $9,024.25. Additional returns in the amount of $5,298.01 were accepted by Melbourne shortly before bankruptcy but were not reported to the factor until after bankruptcy. Of the returns reported before bankruptcy there was proof of 59 instances, totaling only $1,463.-60, which gave the factor notice that Melbourne had been slow in reporting the return.

██ The cases which have invalidated security assignments because of the as-

signor's reservation of dominion over merchandise returns, have uniformly required a showing not only that the assignee knew of the assignor's practice of selling the returns for his own benefit but also that the assignee agreed to such practice. Mere acquiescence will not suffice. Brown v. Leo, 2 Cir., 12 F.2d 350, 351; Lee v. State Bank & Trust Co., 2 Cir., 38 F.2d 45, 47; Rochester Ropes, Inc. v. Scherl, 2 Cir., 121 F.2d 852, 853; Glenn, Fraudulent Conveyances and Preferences, Vol. 2, p. 1007. The trial court found that the factor did not directly sanction Melbourne's practices although "it had knowledge of them, or had reason to know about them." This is a far cry from the necessary finding of agreement by the factor. Nor do we think the evidence required a finding that the factor agreed to Melbourne's practices. At the most it proved only that the factor knew that Melbourne was frequently late in reporting returns. Most of the delayed items were insignificant in amount. In two instances involving more than $100 each the factor protested about the delay and it was explained as due to efforts to get the customer to take back the returned goods. Even if the instances where no excuse was given charged the factor with knowledge that Melbourne was frequently violating the contract provision to report returns immediately, such knowledge did not give notice that it was also violating the agreement to hold the returns in trust "until the amount advanced upon the account shall have been repaid to the factor." Such repayment was effected by debiting the reported returns against Melbourne's account on the factor's books. Baum, an officer of the factor, tesified that returned merchandise was to be kept segregated until Melbourne put through the credit memorandum to be debited against its account. Meltzer, the president of Melbourne, agreed that such was the understanding and testified that he had issued instructions to that effect to the shipping clerk. The latter disregarded those instructions, but no knowledge of his disobedience was brought home to the factor. The appellant makes much of Baum's admission in his examination before trial that he did not understand as a practical matter that the merchandise returns were to be kept apart or in separate boxes. But this admission— even if we disregard his later correction, "but it was required that they be held in trust for us"—is not enough to establish a modification by the parties of their agreement that the returned goods were to be held in trust until reported. No conduct of the factor can be pointed to which would indicate to Melbourne the factor's agreement to a modification of such provision. Accordingly we agree with the trial judge's conclusion that the facts at bar take the case out of the Benedict v. Ratner principle. Judgment affirmed.